UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLES W. WEBER,

    Petitioner,

  v.

STEPHEN SINCLAIR,

    Respondent.

Case No. C08-1676RSL

ORDER DENYING IN PART
FEDERAL HABEAS PETITION AND
GRANTING EVIDENTIARY
HEARING

## I. INTRODUCTION

  This matter comes before the Court on petitioner's third amended federal habeas petition (Dkt. #70). Petitioner identified six grounds for relief from his state court conviction. Magistrate Judge Theiler prepared a Report and Recommendation (R&R) (Dkt. #92) which recommended that this Court deny the petition.

  As explained below, the Court adopts the R&R as to grounds for relief one through four and six. The Court however does not adopt the R&R as to the fifth ground for relief due to petitioner's newly asserted claim under Martinez v. Ryan, 132 S. Ct. 1309 (2012). See Objection (Dkt. #95) at 3. As the Court finds that petitioner has satisfied Martinez, the Court grants an evidentiary hearing limited to petitioner's ineffective assistance of counsel (IAC) ground for relief. The Court however dismisses the petition as to the remaining five grounds for relief.

## II. DISCUSSION

**A. Background**

The Washington State Supreme Court summarized the factual background as follows:

¶ 4 Early morning on March 18, 2003, law enforcement responded to a report of bullet-riddled sport utility vehicle (SUV). Gabriel Manzo Vazquez, the vehicle's owner, reported the shooting took place when he was attending a party at the apartment of his friend, Rhonda Encinas. While at the party, Vazquez met three men: Nick Renion, "Andreas," and a man who went by the moniker "Guero Loco." He and Renion began arguing, and at some point during the argument, Guero Loco pulled a semiautomatic handgun on Vazquez. Vazquez ran into a bedroom where Victor Garcia–Rodriguez was watching television. Vazquez jumped out of the bedroom window and ran to his car. Vazquez alleged that Guero Loco shot at him several times as he drove away. One of the bullets grazed his abdomen.

¶ 5 Vazquez described Guero Loco as a white male in his 20s, about five feet six inches tall, very skinny, and with a shaved head. Vazquez also described Guero Loco as having a "206" tattoo on the back of his neck, though he did not describe the size of the tattoo. Based on this information, a deputy looked through the department's database for anyone named "Guero Loco." Not finding a record of anyone with that name, the deputy entered the term "loco," resulting in a list of 10 or 12 names. He found petitioner Weber associated with the term "Weta Loco" and also determined that Weber had a "206" tattoo on the back of his neck. Clerk's Papers (CP) (June 10, 2003) at 111 (*State v. Weber*, 159 Wash.2d 252, 149 P.3d 646 (2006)). The deputy opined that "Wedo Loco" and "Guero Loco" were the same. CP at 110–11.

¶ 6 Later that same day, another deputy stopped Weber for failing to stop at a stop sign. Weber was driving a gray sedan. The deputy noticed Weber had "LOCO" tattooed across his fingers and "206" tattooed on the back of his neck. "Wedo Loco" was also tattooed on the side of Weber's neck. After confirming probable cause for arrest, the deputy arrested Weber. A search of the car incident to the arrest uncovered "baggies" of cocaine. A subsequent search of the car uncovered information regarding Rhonda Encinas.

¶ 7 Weber was interviewed at the sheriff's office and was informed that he had been arrested for a shooting at a party. Weber claims he assumed he was arrested for drugs. He declined to give a statement and was transported to the King County Jail. Weber's booking photo shows that he had short dark hair, was five feet seven inches tall, and weighed 165 pounds.

¶ 8 Vazquez was shown a photo montage. He selected Weber with 80 percent certainty but could not be sure without seeing the tattoos.

ORDER DENYING IN PART FEDERAL
HABEAS PETITION                        -2-

¶ 9 Garcia–Rodriguez, whose bedroom Vazquez fled through, was interviewed by a detective at Encinas's apartment the next day. He permitted the detective to examine the apartment and take photographs. Garcia–Rodriguez stated that Weto Loco[1] was at the party that night but did not see Weto Loco with a gun. He also stated the shooter left in a gray car. He identified Weber from a photomontage. Garcia–Rodriguez did not testify at trial.

¶ 10 A detective spoke with Encinas the following day. She was uncooperative and provided no useful information. Encinas was served with a subpoena to appear for trial. Although the detective obtained a material witness warrant, Encinas was not apprehended on the warrant and she never showed up to testify.

¶ 11 The State did not locate or interview Renion even though he was considered a possible accomplice and was arrested on an unrelated matter during the investigation. "Andreas" was also not located or interviewed even though he was reported to be Encinas's and Renion's cousin. The sheriff's office neither searched Weber's residence nor sought to have him tested for gunpowder residue. The firearm in this case was never found.

¶ 12 The State charged Weber with attempted first degree murder, first degree assault, first degree unlawful possession of a firearm, and unlawful possession of cocaine with intent to deliver. Weber pleaded guilty to the cocaine charge before trial on the other charges. Weber asserts that defense counsel urged him to accept a plea on the shooting charges but that he refused because he was innocent. Defense counsel interviewed Vazquez but did not interview Encinas or Renion. He did not locate or interview Andreas. Weber asserts that while his attorney mentioned Renion to him, he did not mention the name Andreas.

¶ 13 Vazquez was the only direct eyewitness to the shooting to testify at trial. He testified that he arrived at Encinas's house around 8:00 p.m. and the shooting occurred sometime between 3:30 a.m. and 5:00 a.m. Vazquez testified that the shooter went by the nicknames "Guero Loco" and "Boxer" and that he had met him once before at Encinas's apartment. He testified that Guero Loco left the party about a half hour after arriving. Guero Loco then returned, staying at the party until the shooting.

¶ 14 According to Vazquez, there were six people in the apartment at the time of the shooting: himself, Encinas, Renion, Guero Loco, Andreas, and Garcia–Rodriguez. Vazquez admitted he had about nine beers but was not drunk. He and Renion got into an

---

[1] [Washington State Supreme Court footnote] This spelling is found in the transcript of the interview; Garcia–Rodriguez did not provide this spelling. State's Resp. to Pers. Restraint Petition, App. D.

ORDER DENYING IN PART FEDERAL
HABEAS PETITION                    -3-

argument, and Encinas tried to intervene but was pushed aside. Vazquez testified that Guero Loco then pulled out a semiautomatic handgun, pointing it at him. Vazquez stated he ran to the bedroom and then jumped out of the window to get to his car. He stated he was backing up his vehicle when Guero Loco ran downstairs. Vazquez testified that he saw Guero Loco load a magazine into the gun with his right hand, while holding the gun with his left hand, and that Guero Loco then started shooting at him with one of the bullets hitting his stomach.

¶ 15 Vazquez testified that he was 80 percent certain that the man he picked from the photomontage, Weber, was the shooter. He said he could not be sure without seeing the tattoo on his neck. Vazquez identified Weber in the courtroom, testifying he was the shooter. But Vazquez noted that Weber's hair was different. During closing arguments, defense counsel reminded the jury that Weber's hair was the same at trial and in the photomontage.

¶ 16 Jennifer Martini testified for the State, stating she called 911 on March 18, 2003, around 3:00 a.m. after she heard gunshots from her balcony. She testified that she saw a dark SUV driving away, and a few minutes later she saw a second vehicle, a light colored, four-door sedan, follow the SUV. The State admitted exhibits of Vazquez's SUV and Weber's gray sedan. Martini identified the SUV as the first vehicle she saw on the night of the shooting, and she testified that the gray sedan was similar to the second vehicle she saw that night.

¶ 17 Stephanie Fisher, Weber's cousin and alibi witness, testified that Weber was with her all night. The State impeached her with a previous conviction for impersonation and inconsistencies between her trial testimony and her interview the detective.[2] She then testified that Weber went out twice that evening. Fisher attributed her inconsistent statements to the detective's intimidating behavior. She also explained that there was a portion of her interview that was not recorded and that she had her 15-month-old baby on her lap during the entire interview.

¶ 18 The jury found Weber guilty of the lesser degree crime of attempted second degree murder, first degree assault, and first degree unlawful possession of a firearm. The trial court vacated the assault conviction on double jeopardy grounds. On direct appeal the Court of Appeals reversed, holding that the trial court should have vacated the attempted second degree murder conviction instead. *State v. Weber*, 127 Wash.App. 879, 112 P.3d 1287 (2005), *aff'd*, 159 Wash.2d 252, 149 P.3d 646 (2006). On remand, the trial court

---

[2] [Washington State Supreme Court footnote] During her interview with the detective, Fisher initially stated Weber was with her all evening. But after the detective warned Fisher about the risk of being found guilty of perjury and that such a conviction could be used against her in her child custody battle, Fisher admitted Weber went out a couple of times during the evening.

imposed a sentence for the first degree assault conviction. Weber filed a PRP in the Court of Appeals, which was dismissed. *In re Pers. Restraint of Weber*, No. 60449–0–I (Wash.Ct.App. Mar. 21, 2008). We denied discretionary review of that dismissal.[3] *In re Pers. Restraint of Weber*, No. 81579–8 (Wash. Sept. 29, 2008).

¶ 19 More than one year after the judgment and sentence became final, Weber filed the instant personal restraint petition in this court. Weber maintains he is innocent of his first degree assault and firearm conviction and claims defense counsel was ineffective. The petition is supported by several declarations.

¶ 20 Consideration of Weber's petition was stayed pending our decision in *Carter*, 172 Wash.2d 917, 263 P.3d 1241. That decision is now final. In *Carter* we recognized "actual innocence" as a form of equitable tolling of the time limit on personal restraint petitions. In light of *Carter*, Weber contends that based on the new evidence supporting his innocence, this court should equitably toll the statutory one year time limit on his PRP to consider his constitutional ineffective assistance of counsel claim. He also contends we should recognize a constitutional free-standing claim of actual innocence.

In re Weber, 175 Wn.2d 247, 250-254 (2012).

## B. Procedural History

Magistrate Judge Theiler summarized the procedural history of petitioner's habeas corpus petition as follows:

There is no dispute about the procedural history. Mr. Weber is a Washington-state prisoner who is serving life without the possibility of early release because while incarcerated he received a third strike for assaulting another prisoner. (Third Am. Pet., at 1; SCR, Exhs. 1, 2, 3.) His current federal habeas petition concerns his 2003 conviction in King County Superior Court for attempted murder, assault, a firearms count, and a VUCSA count.

The trial court vacated his 2003 assault conviction on double-jeopardy grounds. SCR, Exh. 1. In 2005, the Washington Court of Appeals reversed the vacation of the assault conviction, vacated the conviction for attempted murder, reversed exclusion of the juvenile adjudication in calculating his offender score, and remanded for resentencing. *State v. Weber*, 112 P.3d 1287 (Wash. Ct. App. 2005). In 2006, the

---

[3] [Washington State Supreme Court footnote] While serving his sentence, Weber was convicted of second degree assault against another inmate and sentenced as a persistent offender to life without the possibility of early release. *State v. Weber*, 137 Wash.App. 852, 155 P.3d 947 (2007). This case involves a challenge to one of Weber's strike offense convictions.

ORDER DENYING IN PART FEDERAL
HABEAS PETITION                    -5-

1  Washington Supreme Court affirmed in a published opinion. *State v. Weber*, 149 P.3d

2  646 (Wash. 2006). In June 2007, the United States Supreme Court denied his petition for

3  a writ of certiorari. (SCR, Exh. 14.)

   Thereafter, Mr. Weber filed **two state personal restraint petitions** ("PRPs"), one

4  before and one after filing the current **federal habeas petition**. In August 2007, Mr.

5  Weber filed his **first PRP**. SCR, Exh. 15. The state court of appeals dismissed the first

   PRP (SCR, Exh. 17), and in September 2008, the state supreme court denied

6  discretionary review (SCR, Exh. 19).

7  In November 2008, Mr. Weber filed his **federal habeas petition**. (Dkt. 1.) The

8  Court appointed counsel for Mr. Weber and later allowed substitution of counsel. (Dkts.

   3, 7, 8, 9, 10, 16). A First Amended Petition was filed, discovery was completed, and an

9  answer was filed when, in March 2010, Mr. Weber filed a Second Amended Petition and

10 the parties were granted a stipulated motion to stay and abey so that Mr. Weber could

   return to the state courts to exhaust remedies based in part on new evidence of actual

11 innocence. (Dkts. 37, 38, 39.)

12 In May 2011, Mr. Weber filed his **second PRP** before the state supreme court.1

13 (Dkt. 73 (hereinafter "Supp. SCR"), Exh. 21.) In September 2012, the Washington

   Supreme Court issued a published opinion that dismissed Mr. Weber's second PRP

14 because (1) Mr. Weber failed to make a threshold showing of a gateway actual innocence

15 claim such that the state statute of limitations was not equitably tolled to permit

   consideration on the merits of whether his trial counsel was constitutionally ineffective;

16 and (2) the state supreme court declined to recognize a freestanding actual innocence

17 claim and, were it to recognize one, would conclude that Mr. Weber necessarily could

   not succeed on such a claim given that he could not overcome the lower threshold of

18 demonstrating gateway actual innocence. *In re Weber*, 284 P.3d 734 (Wash. 2012).

19 The stay on Mr. Weber's federal habeas petition was lifted in late-2012, a Third

20 Amended Petition was filed, and an answer and supplemental state court records were

   filed in early-2013. (Dkts. 69, 70, 71; *see* Dkt. 73 (hereinafter "Supp. SCR").) The Court

21 granted extensions of time for the parties to respond to briefing and granted a stipulated

22 motion to expand the record. (Dkts. 75, 77, 84.) The Court also granted Mr. Weber's

   unopposed motion for limited discovery so that he could propound subpoenas on

23 Sacramento County, California police agencies in search of information about the person

24 Mr. Weber proposes was the true shooter in the 2003 incident. (Dkt. 85.) The Court

   noted, however, that permitting such limited discovery "does not suggest that Mr.

25 Weber's request for an evidentiary hearing will be granted or that he may present the

   records he obtains for the first time to a federal court on habeas review." (Dkt. 85, at 2.).

26 R&R (Dkt. #92) at 3-5. Petitioner voluntarily dismissed his second, third, and fourth grounds for

ORDER DENYING IN PART FEDERAL
HABEAS PETITION                     -6-

relief during briefing. R&R (Dkt. #92) at 2. His remaining grounds for relief are:

(1) Prosecutorial Misconduct; (5) Ineffective Assistance of Counsel; and (6) Freestanding Actual Innocence.

In his objection to the R&R, petitioner proposed Martinez as an alternate procedural mechanism to enable this Court to reach the merits of his IAC claim (ground for relief five). Objection (Dkt. #95) at 3. As this was not addressed in the R&R, the Court will determine whether petitioner can satisfy Martinez.

**C. Standard of Review**

The Antiterrorism and Effective Death Penalty Act (AEDPA), which applies to petitioner, mandates that

> [a]n application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Clearly established Federal law' refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions." Winzer v. Hall, 494 F.3d 1192, 1196 (9th Cir. 2007) (internal citations omitted). In order to grant relief, the district court must be convinced that "the state court's decision is 'more than incorrect or erroneous' . . . [but] must be 'objectively unreasonable.'" Id. (quoting Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). For claims "adjudicated on the merits in State Court," § 2254(d) limits the record to that which was before the state court. Stokley v. Ryan, 659 F.3d 802, 807 (9th Cir. 2011). However, newly presented evidence may be considered if petitioner raises a new ground for relief which was not adjudicated on the merits in state court. Id. at 809; see 28 U.S.C. § 2254(e)(2).

**D. Ground One-Prosecutorial Misconduct**

1
2
3

The Court adopts the R&R as to petitioner's first ground for relief as the alleged prosecutorial misconduct did not rise to a sufficient level to be "contrary to . . . clearly established Federal law." See 28 U.S.C. § 2254(d)(1).

4

**E. Ground Five-Ineffective Assistance of Counsel**

5
6
7
8
9
10
11
12
13
14
15

"When a petitioner fails to present a federal claim to the state court, the claim is unexhausted, and the petitioner must generally return to state court." Stokley, 659 F.3d at 809. A claim is, however, procedurally defaulted if the petitioner failed to exhaust and is now procedurally barred by the state court. Id. Petitioner raised the IAC claim in an untimely Personal Restraint Petition. Weber, 175 Wn.2d at 249. Petitioner has therefore procedurally defaulted his IAC claim unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). While initially attempting to excuse the procedural default solely through the "miscarriage of justice" exception, petitioner raised the Martinez exception to the Coleman "cause and prejudice" standard in a later pleading. See Objection (Dkt. #95) at 3; see also Martinez, 132 S. Ct. at 1319.

16

**1. Martinez "Cause and Prejudice"**

17
18
19

The Supreme Court has "announced an exception to the longstanding Coleman rule that ineffective assistance of PCR counsel cannot establish cause to overcome procedural default." Dickens v Ryan, 740 F.3d 1302, 1319 (9th Cir. 2014). The Court held:

20
21
22
23

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in the proceeding was ineffective.

24
25
26

Martinez v. Ryan, 132 S. Ct. at 1320. To establish "cause" for a procedural default under Martinez, a petitioner must show that "(1) the underlying ineffective assistance of trial counsel claim is 'substantial'; (2) the petitioner was not represented . . . during the PCR proceeding; (3)

the state PCR proceeding was the initial review proceeding; and (4) state law required . . . the petitioner to bring the claim in the initial review collateral proceeding." Dickens, 740 F.3d at 1319.

To satisfy the first prong of Martinez, "a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S. Ct. at 1318. "An IAC claim has merit where (1) counsel's 'performance was unreasonable under prevailing professional standards,' and (2) 'there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different.'" Cook v. Ryan, 688 F.3d 598, 610 (9th Cir. 2012) (internal citation omitted). "Substantiality" requires a petitioner to demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Detrich v. Ryan, 740 F.3d 1237, 1245 (9th Cir. 2013) (internal citation omitted).

"Strickland [v. Washington, 466 U.S. 668 (1984)] allows for a finding of ineffectiveness based on omissions, not just overt acts of counsel." Vega v. Ryan, 735 F.3d 1093, 1096 (9th Cir. 2013). "A lawyer who fails adequately to investigate, and to introduce into evidence, records . . . that raise sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999). "A decision not to investigate 'must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Vega, 735 F.3d at 1097 (internal citation omitted). "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Strickland, 466 U.S. at 696.

Without passing judgment on the merits of petitioner's IAC claim, the Court finds that petitioner has satisfied the Martinez standard for "substantiality." Based on petitioner's list of alleged pre-trial and trial errors, Objection (Dkt. #95) at 5-6, the Court finds that "reasonable jurists could debate" whether petitioner's trial-counsel performed deficiently. The Court finds

that petitioner's allegations that trial-counsel failed to adequately question the victim concerning his assailant's haircut,[4] failed to present evidence that a phone area code tattoo is very common, failed to elicit testimony about the "Boxer" nickname,[5] and failed to properly interview key witnesses meet the standard of "substantial" under Martinez. See id. Additionally, these errors potentially resulted in prejudice as they cast doubt upon the primary state witness's identification of petitioner. "[R]easonable jurists could debate" whether the "decision reached would reasonably likely have been different absent the errors." Petitioner therefore satisfies the Martinez "substantial" prong.

As petitioner was not represented during the first post-conviction relief proceeding, he has satisfied the second prong under Martinez. See Objection (Dkt. #95) at 6.

Petitioner has satisfied the third prong as the state post-conviction proceeding was the initial review for his ineffective assistance of counsel claims. See id. at 7.

To analyze the fourth prong, this Court must determine whether Martinez applies to the State of Washington. The Supreme Court has "slightly modified the fourth requirement to allow a finding of 'cause' where it is 'highly unlikely' that an IAC claim can be raised on direct appeal." Ha Van Nguyen v. Curry, 736 F.3d 1287, 1293 (9th Cir. 2013) (quoting Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013)). Washington State "regularly consider[s] such claims on direct appeal." State v McFarland, 127 Wn.2d 322, 388 n.5 (1995). This Court must therefore determine whether it is "highly unlikely" that petitioner's ineffective assistance of counsel claim could have been effectively raised on direct appeal.

The Washington Supreme Court does not mandate that IAC claims be raised in a personal restraint petition but has stated that "a personal restraint petition is the appropriate means of

---

[4] The victim Vasquez described his assailant as having a shaved head. Weber, 175 Wn.2d at 249. In his booking photo later the same day, petitioner had short dark hair. Id. at 251.

[5] Vasquez stated that he knew his assailant by two nicknames: "Geuro Loco" and "Boxer." Weber, 175 Wn.2d at 260. There was however no evidence linking petitioner to the "Boxer" nickname. Id.

ORDER DENYING IN PART FEDERAL
HABEAS PETITION                              -10-

having the reviewing court consider matters outside the record." Id. "[T]he need to expand the

trial court record" is a key factor supporting "initial consideration of [IAC] claim[s] during

collateral, not on direct, review." See Trevino, 133 S. Ct. at 1921. Petitioner's IAC claim relies

on evidence outside the record. Objection (Dkt. #95) at 8. Petitioner's IAC claim includes

allegations of sixteen specific instances of his trial-attorney's conduct before or during trial that

he claims show ineffective assistance and prejudice. Id. at 5-6. Of these sixteen allegations, the

only one that could have been decided with evidence in the record is the allegation of the

attorney's failure to object at trial. This claim was already considered and dismissed on direct

appeal in state court proceedings and therefore cannot be raised with this Court. See State v.

Weber, 112 P.3d 1287, 127 Wn. App. 879, *893 ¶51-56 (Wash. Ct. App. 2005). However, all of

petitioner's other claims involve trial strategy and alleged errors of omission, including: failure

to investigate the party, failure to interview potential or actual witnesses, failure to consider

evidence of the shooter's shaved head compared to the defendant's haircut, failure to challenge

the photo lineups, failure to adequately cross-examine and impeach the victim on the

identification of the shooter, failure to present a timeline to the jury, failure to hire a gun expert,

failure to present evidence that an area code tattoo is common, and failure to present evidence

that the nickname "Guero Loco" is common. In order to determine whether these allegations

constitute ineffective assistance of counsel, a court would need further evidence from outside the

record that explains the trial-attorney's strategy and omissions, the reasons behind these

decisions, and how or why such decisions were prejudicial to petitioner. This Court therefore

finds that, since direct appeal is not the appropriate venue for reviewing evidence outside the

record in Washington, petitioner was denied a "meaningful opportunity to present a claim of

ineffective assistance of trial counsel on direct appeal"[6] for all but one portion of his IAC claim.

---

[6]The Court notes similarities between Washington and Tennessee law as discussed in Morrow v. Brandon, No. 3:06-0955, 2014 WL 49817 (M.D. Tenn. Jan. 7, 2014). The court noted that "for the typical case in Tennessee's system, the post conviction proceeding is the principal and most effective procedure to raise an ineffective assistance of counsel claim." Id. at *9. This is comparable to Washington where, although defendants can and do raise successful IAC claims on direct appeal, see

ORDER DENYING IN PART FEDERAL
HABEAS PETITION                              -11-

See Trevino, 133 S. Ct. at 1921. Petitioner therefore satisfies the fourth Martinez prong.[7]

Petitioner argues that a showing of Coleman "actual prejudice" is unnecessary under Martinez. See Objection (Dkt. 95) at 6. Petitioner relies on Detrich, a plurality opinion which found that "[t]here is no need to show 'prejudice' resulting from the failure of the pro se prisoner during the state PCR proceeding to raise a claim of trial-counsel IAC, over and above the need to satisfy the first Martinez requirement that the underlying trial-court IAC claim be 'substantial.'" Detrich, 740 F.3d at 1245. "'Prejudice' for purposes of the Coleman 'cause and prejudice' analysis in the Martinez context requires only a showing that the trial-level ineffective assistance of counsel claim was 'substantial.'" Clabourne v. Ryan, __ F.3d __, No. 09-99022, 2014 WL 866382, at *11 (9th Cir. March 5, 2014). This Court will therefore not require a showing of Coleman "prejudice" beyond substantiality. To demonstrate a substantial IAC claim, petitioner "must demonstrate that the claim has some merit." Martinez, 132 S. Ct. at 1318. As discussed above, the Court has found that petitioner's IAC claim is substantial. Petitioner has therefore demonstrated Coleman "prejudice" as defined by the Ninth Circuit.

The district court's role is to "to determine . . . whether there is 'cause' to excuse . . . procedural default . . . [and if so to] then address on the merits the substantial trial-counsel IAC claims." Detrich, 740 F.3d at 1248. "For procedurally defaulted claims, to which Martinez is applicable, the district court should allow discovery and hold an evidentiary hearing where appropriate to . . . determine, if the default is excused, whether there has been trial counsel IAC."

---

e.g., State v. Kyllo, 166 Wn.2d 856, 859 (2009), IAC claims relying on evidence outside the trial record are most effectively brought in a post-conviction proceeding. See McFarland, 127 Wn.2d at 388 n.5.

[7] Other district courts that initially rejected Martinez on this basis have since reversed their stance following Trevino. See, e.g., Moore v. Stewart, No. 2:09-cv-02698-JPM-cgc, 2013 WL 4434371, at *3 (W.D. Tenn. Aug. 14, 2013); Brown v. Thomas, No. 2:11-CV-3578-RDP, 2013 WL 5934648, at *2 (N.D. Ala. Nov. 5, 2013); Raglin v. Mitchell, No. 1:00cv767, 2013 WL 5468227, at *7 (S.D. Ohio Sept. 29, 2013). Additionally, the post-Trevino Washington cases to address the issue have applied Martinez without undertaking this analysis. See Dermendziev v. Uttecht, No. C13-0236-JCC, 2013 WL 6243741, at *9 (W.D. Wash. Dec. 3, 2013); Yates v. Sinclair, No. C13-0842 RSM, 2014 WL 499003, at *3 (W.D. Wash. Feb. 7, 2014).

ORDER DENYING IN PART FEDERAL
HABEAS PETITION                    -12-

Id. at 1246. As petitioner has satisfied Martinez, he has demonstrated Coleman "cause and prejudice" to overcome the procedural default of his IAC claim. The Court therefore grants petitioner an evidentiary hearing on his fifth ground for relief.

**2. Actual Innocence Gateway**

The Court adopts the R&R's conclusion that petitioner has not satisfied the standard for the actual innocence gateway exception.

Petitioner has asserted actual innocence to excuse the procedural default of his IAC claim by "implicating a fundamental miscarriage of justice." See Schlup v. Delo, 513 U.S. 298, 315 (1995) (internal citation omitted). In order to pass through the Schlup gateway, "the habeas petitioner [must] show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Id. at 327 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. This does not "merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." Id. at 329. "[T]he District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." Id. at 331-32. The Supreme Court has cautioned, however, "that tenable actual-innocence gateway pleas are rare." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).

The Court agrees with the R&R that petitioner's newly presented evidence does not satisfy the "more likely than not" standard. See Schlup, 513 U.S. at 327. The declarations submitted years after the event by persons known to petitioner do not sufficiently undermine this Court's opinion of the trial evidence for it to unequivocally conclude that "it is more likely than not that no reasonable juror would have convicted him."[8] See id.; cf. House v. Bell, 547 U.S.

---

[8]Petitioner's newly discovered evidence consists of declarations. "[M]otions based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." Herrera v. Collins, 506 U.S. 390,

518, 554 (2006) (allowing gateway claim where petitioner called into question the credibility of forensic evidence as well as presented substantial evidence pointing to a different suspect). Petitioner has therefore failed to carry the high burden imposed by <u>Schlup</u>.

**F. Ground Six: Freestanding Actual Innocence**

The Court adopts the R&R's conclusion that petitioner's sixth ground for relief be denied. The Supreme Court has never recognized a freestanding actual innocence claim,[9] and as such it cannot qualify as "clearly established Federal law" for the state court to act "contrary to." <u>See</u> 28 U.S.C. § 2254(d)(1). This Court is therefore unable to grant habeas relief on petitioner's sixth ground for relief.

**G. Certificate of Appealability**

Petitioner may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied by "demonstrating that jurists of reason could disagree with the district court's resolution of his case or that the issues presented were adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003). The Court grants a certificate of appealability only for petitioner's ground five gateway actual innocence claim, as recommended by the R&R. <u>See</u> R&R (Dkt. #92) at 30.

**III. CONCLUSION**

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, this Court hereby finds and ORDERS:

---

417 (1993). This principle, when applied to petitioner's declarations, further undermines the newly presented evidence's influence.

[9]<u>Herrera</u> recognized that executive clemency was the "traditional remedy for claims of innocence based on new evidence." <u>Herrera</u>, 506 U.S. at 417. Further, as the "threshold showing for such an assumed right would necessarily be extraordinarily high," <u>id.</u>, it is highly unlikely that petitioner could satisfy this standard even if freestanding actual innocence was a tenable claim.

(1) The Court partially adopts the R&R (Dkt. #92) as explained above.

(2) The Court grants petitioner an evidentiary hearing on ground five for relief, ineffective assistance of counsel, for those claims listed herein that could not have been raised on direct appeal because they rely on evidence outside the record.

(3) Petitioner's remaining grounds for relief in his federal habeas petition (Dkt. #70) are DENIED.

(4) A status conference has been scheduled for **Wednesday, April 30, 2014 at 11:00am** in the courtroom 15106 of the United States Courthouse, 700 Stewart Street, Seattle, Washington.

(4) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 28th day of April, 2014.


_MW S Lasnik_
Robert S. Lasnik
United States District Judge

ORDER DENYING IN PART FEDERAL
HABEAS PETITION                          -15-